UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEDRICK MONTEZ JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-04018-SLD |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER

Before the Court are Petitioner Dedrick Montez Jones's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Motion"), ECF No. 1; motion for status, ECF No. 8; and request for a ruling, ECF No. 9. For the reasons that follow, the 2255 Motion is DENIED, the motion for status is MOOT, and the request for a ruling is GRANTED.

**BACKGROUND[1]**

Petitioner was indicted on one count of possessing at least 500 grams of a mixture and substance containing cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Indictment, Cr. ECF No. 1. He hired attorney Nate Nieman to represent him. *See* Cr. Nov. 19, 2015 Minute Entry. On Petitioner's behalf, counsel filed a motion to suppress arguing that certain physical evidence and statements Petitioner made were obtained in violation of the Fourth Amendment. Mot. Suppress 1, Cr. ECF No. 13.

A hearing was held on the motion on June 21, 2016. Cr. June 21, 2016 Minute Entry. Officer Ryan DeRudder testified at the hearing as follows. *See* Mot. Suppress Hr'g Tr. 3:13–

---

[1] References to Petitioner's underlying criminal case, *United States v. Jones*, 4:15-cr-40075-SLD, take the form: Cr. ___.

1

19:23, Cr. ECF No. 30. On September 1, 2015, he was involved in the stop of a vehicle in which Petitioner was traveling. *Id.* at 4:11–14, 5:2–4. There had been a briefing before the stop; officers received a tip that Petitioner was in the vehicle, though they did not know if he was driving, and might be involved with narcotics. *See id.* at 5:19–6:2, 12:3–10, 16:14–17. Officers planned to stop the vehicle and arrest Petitioner if he was driving because they knew he had a suspended license. *See id.* at 5:24–6:2, 12:16–23.

Another police officer, Deputy DeSmider, stopped the vehicle, *id.* at 6:3–5, and Officer DeRudder pulled in front of it to prevent it from driving off, *id.* at 5:15–18, 6:8–10. The vehicle was pulled over for speeding. *Id.* at 13:17–25. When the vehicle was stopped, Deputy DeSmider approached the driver's side door. *Id.* at 6:11–18. He discovered that Petitioner was driving, and within minutes, Petitioner exited the vehicle and was placed under arrest for driving with a suspended license. *See id.* at 7:17–25, 8:6–9. He was placed in the backseat of Deputy DeSmider's squad car. *Id.* at 8:1–3.

Within a couple of seconds of Petitioner exiting the vehicle, Officer DeRudder retrieved his police dog, and they approached the vehicle. *Id.* at 8:10–15, 8:19–24. The dog conducted a free air sniff of the vehicle for about thirty seconds; it alerted to the presence of narcotics on the rear part of the vehicle. *Id.* at 8:25–9:6, 10:8–14, 10:22–25. After the vehicle's other occupants were removed, the vehicle was searched. *Id.* at 10:1–7. Cocaine was discovered in the trunk lid. *Id.* at 15:24–16:2.

Petitioner testified at the hearing as well. *Id.* at 20:4–23:13. He testified that the officer who came up to the vehicle asked if he had a valid license and registration, to which he responded that he "was suspended and . . . didn't have none." *Id.* at 20:16–23. Petitioner

2

testified that he was then asked to step out of the car and was patted down, arrested, and placed in the back of a police car. *Id.* at 21:1–10.

Counsel for Petitioner conceded, for purposes of the motion to suppress, that the initial stop was valid. Mot. Suppress ¶ 2; Mot. Suppress Hr'g Tr. 24:13–18 ("We concede from the very beginning that even though the traffic stop occurred under probably pretextual conditions, there was a valid reason to pull the car over . . . ."). He argued only that the subsequent dog sniff and search of Petitioner's vehicle violated the Fourth Amendment. *See* Mot. Suppress ¶ 3. Essentially, he argued that the stop had been completed when Petitioner was arrested, so walking the dog around the vehicle impermissibly prolonged the stop. Mem. Supp. Mot. Suppress ¶¶ 3, 5–6, Cr. ECF No. 13-1; Mot. Suppress Hr'g Tr. 24:24–25:2 ("[B]asically, the issue here is whether it was proper for the officer to walk the dog around after the traffic stop had been completed."). At the hearing, the Court questioned why counsel thought the stop had been completed. Mot. Suppress Hr'g Tr. 25:3–4. The Court noted that because Petitioner was arrested for driving without a license, it was not a situation "where he [wa]s . . . going to be able to get back in the car and get on the road." *Id.* at 28:24–25. The Court asked counsel if he knew of any cases in which "there was found to be an unlawfully prolonged traffic stop or an unlawful continuation of the stop" when the defendant was not simply issued a ticket or citation but was instead arrested. *Id.* at 29:8–13. He responded that he did not "have anything immediately available," *id.* at 29:14–15, and that he "did not take a look at that nuance," *id.* at 29:18–19.

The Court first found Officer DeRudder's testimony credible and noted that it had not been disputed. *Id.* at 32:14–16. The Court then noted that it is permissible for an officer to pull a vehicle over if he has probable cause based on a traffic code violation, regardless of whether the officer has other intentions in pulling the vehicle over, "which is exactly what occurred

3

here." *See id.* at 32:19–33:1.  The Court found that "probable cause [to pull the vehicle over] developed in the form of speeding." *Id.* at 33:2–3.  The Court also found that when the officers discovered Petitioner was driving the vehicle, they developed probable cause to believe he was driving with a suspended or barred license, which is an arrestable offense. *Id.* at 33:4–7.  It found that officers "immediately effectuated [Petitioner's] arrest and put him into the lawful custody of the officers," *id.* at 33:8–10, and that the dog sniff occurred without delay because Officer DeRudder was already on the scene and the dog sniff began within thirty seconds of Petitioner being placed into custody in the squad car, *id.* at 33:11–18.  The Court explained that it could not "be reasonably expected that th[e] arrest for . . . driving while license suspended would be complete within 30 seconds of being placed in the back of the squad [car]" and concluded that, "therefore, there was no extension of th[e] traffic stop." *Id.* at 33:23–34:3.  Accordingly, the Court denied Petitioner's motion to suppress.  Cr. June 21, 2016 Minute Entry.

Petitioner subsequently pleaded guilty, Cr. Aug. 18, 2016 Minute Entry, but reserved the right to appeal the Court's denial of his motion to suppress, Reservation of Issues for Appeal, Cr. ECF No. 16.  The Court sentenced Petitioner to 120 months of imprisonment and eight years of supervised release.  *See* Judgment 1–3, Cr. ECF No. 21.  Because Petitioner had a prior conviction for conspiracy to distribute a controlled substance, Not. Intent Rely, Cr. ECF No. 11, 120 months was the applicable mandatory minimum sentence, *see* Revised Presentence Investigation Report ("PSR") ¶ 88, Cr. ECF No. 19.[2]

He appealed.  Not. Appeal, Cr. ECF No. 24.  His counsel moved to withdraw, arguing that any appeal would be frivolous.  *United States v. Jones*, 717 F. App'x 614, 615 (7th Cir.

---

[2] When Petitioner was sentenced, the relevant statutory provision imposed a ten-year mandatory minimum if a defendant had a prior conviction for a felony drug offense.  *See* 21 U.S.C. § 841(b)(1)(B) (effective Aug. 3, 2010 to Dec. 20, 2018).

2017).  Petitioner did not respond, despite being given the opportunity to do so.  *Id.*  Among other issues, the Seventh Circuit considered the Court's ruling on the motion to suppress.  *Id.* at 615–16.  It concluded that both the factual finding that the dog sniff occurred thirty seconds after Petitioner was arrested and the legal conclusion that the sniff "did not cause an impermissible delay that violated [Petitioner's] Fourth Amendment rights" were "unassailable."  *Id.* at 615.  The Seventh Circuit granted counsel's motion and dismissed the appeal.  *Id.* at 616.

Petitioner subsequently filed the 2255 Motion, which asserts three claims: an ineffective assistance of counsel claim (with four grounds); a claim that the Court erred in denying his motion to suppress; and a claim that the Court violated his constitutional rights by sentencing him to a mandatory minimum based on a fact not found by the jury.  2255 Mot. 4–7;[3] Mem. Supp. 2255 Mot. 1, 3–5, 9, ECF No. 1 at 14–25.  The United States opposes the 2255 Motion.  *See* Resp., ECF No. 4.  Petitioner has filed a reply expounding on one part of his ineffective assistance of counsel claim.  *See* Reply, ECF No. 6.

## DISCUSSION

### I.  Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral

---

[3] For clarity, the Court uses the CM/ECF-generated page numbers because the first page of the 2255 Motion is marked as page two.

attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

    II.     Analysis

        a.  **Ineffective Assistance of Counsel Claim**

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The petitioner "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner argues that his trial counsel was ineffective for four reasons: first, for his performance litigating the motion to suppress; second, for failing to object under *Alleyne v. United States*, 570 U.S. 99 (2013), to the imposition of a mandatory minimum; third, for failing to inquire whether or argue that Petitioner's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated; and fourth, for failing to properly investigate, prepare, and argue a defense

6

at the critical stages of the case. *See* Mem. Supp. 2255 Mot. 3. The United States argues these claims are meritless. *See* Resp. 8–14.

### i. Motion to Suppress

In the 2255 Motion, Petitioner argued that counsel was unprepared for the motion to suppress hearing and had failed to locate relevant case law, as evidenced by counsel's statements at the suppression hearing that he had no case law to support his argument and had not researched an issue the Court found important. Mem. Supp. 2255 Mot. 1–3. In the reply, Petitioner expounds on his argument and—presumably to respond to the United States' argument that he had not "show[n] that if his counsel had performed differently, th[e] Court would have granted the motion to suppress," Resp. 9—identifies an alternative argument he wishes counsel would have made. He argues that counsel's choice to argue that the dog sniff unlawfully prolonged the stop was unreasonable and had no basis in law or fact. Reply ¶ 4; *see id.* ¶ 8 ("[I]t was unreasonable for the Petitioner's counsel to argue that an open air dog sniff of the exterior of a vehicle, after the Petitioner has been <u>lawfully</u> stopped and arrested, because his license was suspended, violated the Petitioner's Fourth Amendment right . . . ."); *id.* ¶ 9 ("[C]ounsel's argument had no foundation in law or fact. . . . [C]ounsel's choice to argue that the dog sniff violated the Petitioner's right is unreasonable. Also, there is no authority to support the conclusion that an arrest marks the end of a traffic stop."). And he contends that counsel should have argued instead that the initial traffic stop was invalid because there was no evidence he was speeding. *See id.* ¶ 4 ("[C]ounsel's choice to concede the validity of the initial traffic stop [was] unreasonable . . . ."); *id.* ¶ 5 ("[T]here was no evidence reflecting that the Petitioner was speeding."); *id.* ¶ 12 ("[H]ad counsel argued that the traffic stop was invalid, given the evidence

7

presented, there is a reasonable probability that the motion to suppress evidence would have been granted.").[4]

Petitioner's argument fails. Even if Petitioner could meet his burden to prove that counsel's choice of arguments "was not sound strategy," *Kimmelman*, 477 U.S. at 384, he cannot demonstrate prejudice. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, [a petitioner] must . . . prove that his . . . claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375. Petitioner cannot establish that the claim he thinks counsel should have made—that the initial stop was unlawful—is meritorious.

The Court understands Petitioner to be suggesting counsel should have argued there was no probable cause to stop the vehicle for speeding. *See* Reply ¶ 5 (citing a case in which the court found no probable cause existed to initiate a traffic stop). But Officer DeRudder testified at the hearing that the vehicle Petitioner was driving was pulled over for speeding, Mot. Suppress Hr'g Tr. 13:17–25, and this testimony was not disputed, *see id.* at 32:15–16. Thus, the Court found that "probable cause [to pull the vehicle over] developed in the form of speeding." *Id.* at 33:2–3. Petitioner faults the United States for failing to present evidence that the vehicle was speeding or evidence explaining why the officers believed he was speeding at the hearing. *See* Reply ¶ 5 (noting that "Officer [DeRudder] did not articulate why he believed the Petitioner was speeding, nor did he state why another [o]fficer believed the Petitioner was speeding" and that how fast he was traveling and the posted speed limit were "never verified"); *id.* ¶ 11 (noting that

---

[4] Because Petitioner did not make these more specific arguments until his reply, the United States' response does not address them. But the Court finds it unnecessary to order further briefing because the arguments are clearly unmeritorious.

"the United States did not inquire if in fact the Petitioner was speeding"). But there was no reason for the United States to present this type of evidence because Petitioner conceded that the initial stop was lawful.

In any case, Petitioner sets forth no evidence that would contradict Officer DeRudder's testimony that the vehicle was pulled over for speeding—he does not even claim he was not speeding. He points only to his testimony at the motion to suppress hearing that he did not receive a ticket. *Id.* (citing Mot. Suppress Hr'g Tr. 21). But that he did not receive a ticket—the kind of ticket is not specified—does not suggest the vehicle was not speeding, particularly since police ultimately arrested Petitioner for driving with a suspended license. Moreover, other parts of the record reflect that police initiated the traffic stop because the vehicle was traveling 74 miles per hour in a 55 mile per hour zone. *See* PSR ¶¶ 5, 8 (noting that Rock Island police reports indicated that Petitioner's vehicle was traveling 74 miles per hour in a 55 mile per hour zone); Resp. Mot. Suppress 2, Cr. ECF No. 14 ("Officer Mueller paced the vehicle at 74 miles per hour (mph) in a 55 mph zone for a minimum of half a mile."); Mem. Supp. Mot. Suppress ¶ 1 (noting that police reports reflected that the vehicle was speeding as it entered Rock Island County).

Petitioner has alleged no facts that suggest police lacked probable cause to stop the vehicle for speeding, so he cannot demonstrate prejudice.

### ii. Mandatory Minimum

Next, Petitioner alleges that counsel was ineffective because he failed to object under *Alleyne* to Defendant's mandatory minimum sentence. Mem. Supp. 2255 Mot. 3. This claim fails as well because it is based on a misunderstanding of the law.

9

"Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 570 U.S. at 103 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 490 (2000)). In *Alleyne*, the Supreme Court held that because "[m]andatory minimum sentences increase the penalty for a crime[,] . . . any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* Petitioner argues that counsel should have raised an *Alleyne* challenge because Petitioner was subject to a mandatory minimum based on his prior conviction, which was not found to exist by a jury beyond a reasonable doubt. *See* Mem. Supp. 2255 Mot. 3. But *Alleyne* did not overrule *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which recognized an exception to the requirement that a jury find all facts that increase penalties for the fact of a prior conviction. *Alleyne*, 570 U.S. at 111 n.1 (declining to revisit *Almendarez-Torres* because the parties did not contest the decision's validity); *United States v. Lomax*, 816 F.3d 468, 477–78 (7th Cir. 2016) (recognizing that *Almendarez-Torres* remains good law until the Supreme Court decides otherwise). Therefore, *Alleyne* stands only for the proposition that "any fact other than a prior conviction that alters the prescribed sentencing range in a way that aggravates the penalty is an element of the crime [which must be submitted to the jury]." *United States v. Fincher*, 929 F.3d 501, 504 (7th Cir. 2019).

Counsel was not ineffective for failing to challenge Petitioner's mandatory minimum based on *Alleyne* because *Alleyne* does not apply to mandatory minimums imposed because of a prior conviction. *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) ("Because a defendant's lawyer has an obligation to be truthful and forthright with the court, he has no duty to make a *frivolous* argument . . . ." (quotation marks omitted)).

### iii. *Miranda* Rights

Next, Petitioner argues that counsel was ineffective for failing to inquire whether Petitioner's Fifth Amendment rights were violated because officers failed to read Petitioner his *Miranda* rights. Mem. Supp. 2255 Mot. 3. He argues counsel should have questioned whether any statements or evidence should have been suppressed as fruits of the poisonous tree. *See id.*

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, 384 U.S. at 467, the Supreme Court found that "without proper safeguards[,] the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." The Court therefore "adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right . . . [during] custodial interrogation." *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (citing *Miranda*, 384 U.S. at 467). Specifically, "*Miranda* announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney." *Id.* at 103–04 (citing *Miranda*, 384 U.S. at 444). If the defendant is not informed of his rights when required, statements he makes to police cannot be used in the prosecution's case in chief. *See Oregon v. Elstad*, 470 U.S. 298, 306–07 (1985); *cf. United States v. Patane*, 542 U.S. 630, 639 (2004) (plurality opinion) ("[T]he *Miranda* rule creates a presumption of coercion, in the absence of specific warnings . . . .").

Petitioner's claim fails on a few levels. First, Petitioner does not allege, at least not with the detail and specificity required to obtain an evidentiary hearing, that police actually failed to read him his *Miranda* warnings; he appears to merely claim that counsel should have looked into the issue. The PSR indicates he waived his *Miranda* rights, PSR ¶ 10, which implies they were

read to him. Petitioner also does not identify the statements or evidence he believes should have been suppressed. Second, even assuming he could show that he was in custody and therefore entitled to *Miranda* warnings and police failed to give them before questioning him, he makes no argument about how the outcome of his proceeding would have been different had counsel explored the issue, discovered the *Miranda* violation, and brought it to the Court's attention.

He suggests that statements he made could have been suppressed as fruits of the poisonous tree. *See* Mem. Supp. 2255 Mot. 3. If he is referring to his admission to police that he was driving with a suspended license, officers already knew that he had a suspended license, so he could have been arrested anyway. In its review of the record, the Court located another statement to which Petitioner may be referring. At the change of plea hearing, counsel for the United States represented that, after officers had found the cocaine in the vehicle, Petitioner "admitted that [the drugs] w[ere] his and no one else's and admitted that the substance was cocaine." Change of Plea Hr'g Tr. 17:4–6, Cr. ECF No. 31. Officers had already found the substance in the vehicle Petitioner was driving when he made this statement. And the substance was later confirmed to be cocaine in a lab test. *See id.* at 17:7–11. Petitioner's admissions were not the only evidence against him, so even if they were suppressed, the outcome of the case would not have been different.

He also suggests that physical evidence could have been suppressed. *See* Mem. Supp. 2255 Mot. 3. But the Supreme Court has held that nontestimonial physical evidence obtained as a result of statements made without *Miranda* warnings is admissible. *See Patane*, 542 U.S. at 643 (plurality opinion) ("Introduction of the nontestimonial fruit of a voluntary statement . . . does not implicate the Self-Incrimination Clause. The admission of such fruit presents no risk that a defendant's coerced statements . . . will be used against him . . . . There is simply no need

to extend . . . the prophylactic rule of *Miranda* to this context."); *id.* at 645 (Kennedy, J., concurring in the judgment) (agreeing that a gun obtained as a result of an unwarned statement was admissible because "[a]dmission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself"); *Missouri v. Seibert*, 542 U.S. 600, 619 (2004) (Kennedy, J., concurring) (characterizing *Patane* as holding "that physical evidence obtained in reliance on statements taken in violation of the [*Miranda*] rule is admissible"). Here, even if there was evidence that the cocaine—or any other physical evidence used against Petitioner—was seized as a result of a statement made before Petitioner was read his *Miranda* rights, its suppression would be unnecessary because it is nontestimonial physical evidence.

Petitioner fails to prove that counsel performed deficiently by failing to investigate a potential *Miranda* violation, but even assuming he could meet the performance prong of *Strickland*, he cannot prove prejudice because even if Petitioner's *Miranda* rights had been violated, the outcome of the case would not be different.

### iv. Assistance at Critical Stages of the Proceeding

Lastly, Petitioner argues broadly that his counsel "failed to assure [his] rights were protected" and failed to uphold his duty "to properly investigate, prepare, and argue a defense for [Petitioner] at the 'critical stages' of each pre-trial and during plea negotiations." Mem. Supp. 2255 Mot. 3. He provides no elaboration of how he believes counsel failed to investigate, prepare, or argue a defense. Absent specific allegations of errors on counsel's part or how such errors prejudiced Petitioner, this claim fails. *See* Rule 2(b)(2), Rules Governing § 2255 Proceedings (providing that a 2255 motion must "state the facts supporting each ground"); *see also, e.g.*, *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("When a petitioner

alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced.").

### v. Cumulative Prejudice

When deciding whether a counsel's errors prejudiced a petitioner, courts are to consider the cumulative prejudicial effect of the counsel's errors rather than only analyzing the prejudicial effect of individual errors. *See Myers v. Neal*, 975 F.3d 611, 623 (7th Cir. 2020) ("Where, as here, the record shows more than one instance of deficient performance, the Sixth Amendment requires that we approach the prejudice inquiry by focusing on the cumulative effect of trial counsel's shortcomings."); *Washington v. Smith*, 219 F.3d 620, 634−35 (7th Cir. 2000) ("Evaluated individually, [counsel's] errors may or may not have been prejudicial to [the petitioner], but we must assess the totality of the omitted evidence under *Strickland* rather than the individual errors." (quotation marks omitted)).

Here, Petitioner has failed to prove deficient performance for many of his claims. Assuming he could prove deficient performance with respect to some of them, he has shown no prejudice from counsel's errors. *See supra* Section II(a)(i), (iii). Even viewing these alleged errors cumulatively, he cannot show that there is a reasonable probability that the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694.

### b. Other Claims

Petitioner asserts two other claims: first, that the Court erred in denying his motion to suppress, Mem. Supp. 2255 Mot. 5–8; and second, that the Court imposed a mandatory minimum based on a fact not found by a jury in violation of *Alleyne*, *id.* at 9–12. The United States argues the first claim is procedurally barred because it was raised on direct appeal. *See*

Resp. 14–15. It argues the second claim is meritless because *Alleyne* did not overrule *Almendarez-Torres*. *Id.* at 16–17.[5]

The Court agrees that Petitioner's suppression claim is procedurally barred. "A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (quotation marks omitted). "Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances." *Id.*; *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) ("[I]n the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal."). On appeal, Petitioner's counsel raised the Court's ruling on the motion to suppress as a potential issue, and the Seventh Circuit held that this Court's "factual finding and legal conclusion [we]re both unassailable." *Jones*, 717 F. App'x at 615. Petitioner does not argue that circumstances have changed, so the Court is unable to reconsider this issue.[6]

Petitioner's suppression claim must be denied for another reason too. Where a petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim, he cannot obtain federal habeas relief on the basis that evidence used against him was seized in violation of the Fourth Amendment. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Owens v. United States*, 387 F.3d 607, 609 (7th Cir. 2004) ("[A] violation of the Fourth Amendment cannot be a ground for habeas corpus (or for its equivalent for federal prisoners, such as Owens-the grant of a section

---

[5] Elsewhere in its response, the United States suggests this claim is procedurally barred because it was raised on appeal. *See* Resp. 1, 8. But the Court does not believe the precise argument Petitioner is making—a claim that the mandatory minimum was improperly imposed under *Alleyne*—was raised on appeal. *See Jones*, 717 F. App'x at 616 (noting that counsel considered whether Petitioner could argue the ten-year sentence exceeded the statutory maximum, whether Petitioner could challenge the Court's calculation of the Sentencing Guidelines range, and whether Petitioner could challenge the reasonableness of the sentence). In any case, the United States addresses the merits of the claim, so the Court will too.

[6] Moreover, Petitioner apparently now agrees that the Court was correct to deny the motion to suppress since he contends the argument that the dog sniff violated his Fourth Amendment rights had no basis in fact or law. *See, e.g.*, Reply ¶ 4.

2255 motion) unless the defendant could not have presented a Fourth Amendment defense at trial."); *see also Brock v. United States*, 573 F.3d 497, 500 (7th Cir. 2009) ("[T]he principles of *Stone* apply equally to § 2255 motions."). Ineffective assistance of counsel can be a reason to find that a petitioner did not have an opportunity to litigate his Fourth Amendment claim, *see Owens*, 387 F.3d at 609 ("If the defendant hasn't had effective assistance of counsel at trial, he has been deprived of that opportunity, and the back door to postconviction relief swings open."), but Petitioner here fails to prove that his counsel was ineffective in litigating the motion to suppress. *See supra* Section II(a)(i). Petitioner had the opportunity to litigate his Fourth Amendment claim, so the Court cannot grant him relief under § 2255 for a Fourth Amendment violation.

Moreover, as explained above, the Court finds the *Alleyne* claim meritless. *See supra* Section II(a)(ii). *Alleyne* did not overrule *Almendarez-Torres*, which held that a prior conviction that increases a sentencing penalty need not be found by a jury beyond a reasonable doubt. Here, Petitioner was subject to a mandatory minimum because of a prior conviction. This fact need not have been found by a jury, so the Court did not err in sentencing Petitioner to the mandatory minimum.

### III. Hearing

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the . . . record[] . . . conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). This means that "a district court *must* grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (quotation marks omitted). No hearing is required, however, "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than

detailed and specific." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (quotation marks omitted).

The Court finds that no hearing is necessary here because the motion and records show that Petitioner is entitled to no relief. Some of Petitioner's claims—his *Alleyne*-based claims and his claim that the Court's ruling on the motion to suppress was erroneous—must be denied as a matter of law. Petitioner fails to make specific, detailed factual allegations which, if true, would entitle him to relief on his other claims.

### IV.  Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made such a showing. The Court, therefore, declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Petitioner Dedrick Montez Jones's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 1, is DENIED. His motion for status, ECF No. 8, is MOOT, and his request for a ruling, ECF No. 9, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 17th day of February, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
